In the Matter of HENRY E. COLEMAN, Formerly Known as HENRY COHEN, an Attorney, Respondent.

First Department, February 10, 1939.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

Respondent in person.

PER CURIAM. The Association of the Bar of the City of New York, on the complaint of a physician, Dr. William Engler, of Brooklyn, N. Y., brought charges of professional misconduct against the respondent. Paragraph IV, subdivision (a), of the petition contains the following: " That in or about the month of November, 1935, the respondent acting as the attorney for Abraham Cantor in connection with a claim against the Vim Electric Company induced a physician named Dr. William Engler to testify by promising to pay him his bill of $200 for the medical services which he had rendered Cantor and also for testifying on the trial. The respondent embodied that agreement in a letter which he signed and delivered to Dr. Engler dated November 9, 1935."

The petitioner then alleged that the respondent agreed to pay one-half of the doctor's fee from his share of the proceeds of the action, and the plaintiff, Mr. Cantor, agreed to pay the balance; that the case came on for trial and Dr. Engler testified; that a judgment was entered in favor of the plaintiff, and thereafter the respondent, on behalf of the plaintiff, collected the amount of the judgment in the sum of $4,319.03, but failed to pay Dr. Engler any part of the $200 agreed to be paid to him.

In his answer denying the above charge of misconduct the respondent set forth the following: " Your respondent respectfully states

that the reason why Dr. Engler was not paid by your respondent was because the letter of November 9, 1935, was exacted by duress by Dr. Engler on his threat not to attend at court; that it was virtually a hold-up, because both Dr. Engler and his attorney realized that Dr. Engler's testimony, slight as it was, was important on the trial in showing Cantor's exact condition immediately after the accident."

On the hearings before the referee the respondent testified that he first met Dr. Engler in December, 1933, when he discussed the contents of an affidavit to be used on a motion for a preference. Several days later, when the respondent presented the affidavit for the doctor's signature, the latter stated that Mr. Cantor owed him between twenty and twenty-five dollars for services rendered in connection with the injuries sustained. The doctor asked the respondent what disposition would be made of that bill and the respondent told him that Mr. Cantor was then on relief but that the respondent would pay the bill if the doctor would testify on the trial of the action. In addition to paying the twenty-five dollars in settlement of the bill the respondent said that he would get a letter from the plaintiff promising to pay the doctor an additional $100 for his testimony. Some time thereafter the respondent wrote Dr. Engler as follows: " I will, of course, arrange with you at the proper time for your appearance in court and will, of course, pay you for your time."

In October, 1935, at a time when it was expected that the case would be soon reached for trial, the respondent called upon Dr. Engler and paid him twenty-five dollars in settlement of his bill for services rendered and again promised that the plaintiff would send the doctor a letter agreeing to pay $100 in consideration of his coming to court and testifying in the case. This arrangement was evidently not satisfactory to Dr. Engler, and at his insistence the respondent sent him the letter dated November 9, 1935, in which he promised that the doctor would receive for " past services rendered by you and also to cover the services to be rendered in connection with your appearing in court and testifying on behalf of Cantor * * * the sum of $200, $100 thereof payable from the share of Mr. Cantor and $100 payable from my share. I will see to it that this money is paid in the event there is a recovery or collection."

This letter did not satisfy the complainant, Dr. Engler, and on November 18, 1935, the plaintiff, Mr. Cantor, signed a letter in which he agreed to pay the doctor $100 out of any moneys recovered in the action. Two days later the case went to trial. Dr. Engler testified, and his testimony took up but two and a half pages in the printed record.

A judgment was recovered in favor of the plaintiff. On appeal the judgment was affirmed, and thereafter the judgment was paid in the sum of $4,319.03, which covered costs and interest. The respondent received a net fee of $800, but refused to pay to Dr. Engler any part thereof.

With respect to his letter dated November 9, 1935, in which he promised to pay Dr. Engler $100, the respondent gave the following testimony: " Q. When you drew the letter [Exhibit 5] in which you agreed to pay a hundred dollars out of your share and to see that Engler got a hundred dollars out of Cantor's share did you intend that either of those things would be done? A. Yes, certainly; so far as Cantor was concerned I felt that he ought to pay that $100. So far as I was concerned, at the moment I was chagrined and put out because he held me up and I at the moment thought yes, I would pay him, but I didn't know exactly how much. Frankly, I made a mental reservation at the time because I felt that the man had held me up as if he had put a gun to me and said ' Here, Coleman, you have to give me another letter for a hundred dollars or I will not go to court.' I told him in the beginning that he was indispensable, that I had to have someone there who had seen this man right after the accident and he was taking advantage of that fact."

In his opinion the official referee said: " The testimony of Dr. Engler, the complaining witness, presents an attitude which does not create a favorable impression upon me. He attended Cantor immediately after the accident and continued as Cantor's physician for a period of two weeks, making in all four or five visits. He then ceased treating Cantor, although the latter was suffering from severe injuries, and turned the treatment over to another physician. Thereafter Dr. Engler fixed the value of his services at $25, which sum I find from the evidence was subsequently paid to him by the respondent."

With respect to the demand by Dr. Engler that he be paid $100 by the respondent and $100 by the plaintiff, the referee reported: " The doctor's demand for $200 was unreasonable, and he in my judgment was taking advantage of the situation knowing full well that his testimony concerning Cantor's injuries and the treatment given him immediately after the accident was of extreme importance."

Dr. Engler took advantage of the fact that his testimony was essential to the plaintiff's successful prosecution of his action and he insisted on compensation that was far beyond the value of his services. His conduct in this respect was highly unethical and unprofessional, and it is the opinion of this court that a copy of

this record be forwarded to the medical grievance committee of the New York State Department of Education.

Although we agree .with the referee that the respondent was undoubtedly motivated by a desire to protect his client's interests by securing the truthful testimony of the doctor, we wish to point out that his conduct in agreeing to pay part of his fee to a doctor in consideration of the latter testifying in an action does not reflect credit on him as a member of the bar. In view, however, of all the circumstances surrounding the transactions here involved, this court is of the opinion that a censure is sufficient punishment.

Present — MARTIN, P. J., TOWNLEY, DORE, COHN and CALLAHAN, JJ.

Respondent censured.